UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GABRIELA URIAS,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

KOHL'S CORPORATION,

        Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Gabriela Urias brings this class action against Defendant Kohl's Corporation and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2. Defendant is an American department store retail chain.

3. To harvest the cellular phone numbers of potential customers, Defendant advertises single-use coupons to those who text message Defendant with a keyword (e.g. "SAVE").

4. Without their consent, upon receipt of a coupon request, Defendant automatically opts consumers into its text messaging campaigns.

5. By automatically opting in consumers who are merely seeking a coupon, Defendant fails to obtain the requisite express written consent to send these consumers its marketing text message

1

campaigns.

6. As a result of Defendant's actions, Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

11. Defendant is a Wisconsin Corporation with its principal office located at N56 W17000 Ridgewood Dr. Menomonee Falls, WI 53051-5660. Defendant directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations*

4

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

23. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (emphasis added).

26. As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude

of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**FACTS**

27. On or about May 2018, Plaintiff became aware that Defendant was offering a 15% off coupon through the website www.dontwasteyourmoney.com, a screenshot of which is provided below:



28. On or about May 26, 2018, Plaintiff texted Defendant the word "SAVE" in order to receive the 15% off coupon from Defendant.

29. That same day, Defendant caused two automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 1968 ("1968 Number"):



30. The first text message welcomed Plaintiff to "Kohl's Mobile Sales Alerts!" while the second text message provided Plaintiff with the 15% off coupon she was seeking.

31. Plaintiff did not opt in to Defendant's automated marketing text messages.

32. Nevertheless, Defendant automatically opted Plaintiff into its text messaging marketing campaign.

33. Specifically, on June 14, 2018, Defendant caused a third automated text message ("Third Text Message") to be transmitted to the 1968 Number.

34. The Third Text Message was outside the scope of the limited consent provided by Plaintiff when she texted Defendant for a single-use coupon.

35. Defendant's Third Text Message constitutes telemarketing/advertising because it

promotes Defendant's business, goods and services. The Third Text Message is depicted below:

> Today 2:44 PM
>
> KOHLS: Earn Kohl's Cash + Take 20% off when you spend $100+ or 15% when you spend under $100. Online w/DADS & in store w/ bit.ly/2KjiM0X | STOP to cancel

36. The Third Text Message markets Defendant's business, goods and services by offering Plaintiff 20% off if she spends more than $100 and 15% off if she spends less than $100.

37. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

38. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

39. At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text messages using an ATDS.

40. Plaintiff is the subscriber and sole user of the 1968 Number and is financially responsible for phone service to the 1968 Number.

41. The impersonal and generic nature of Defendant's text messages establishes that Defendant utilized an ATDS to transmit the messages. *See Jenkins v. LL Atlanta, LLC,* No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would

8

be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

42. The number (564-57) that transmitted the text message is operated by or on behalf of Defendant.

43. The number used by Defendant (564-57) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages en masse.

44. The short code 564-57 is registered to Defendant.

45. To send the text messages, Defendant used a messaging platform that permitted Defendant to transmit thousands of automated text messages without any human involvement.

46. The platform utilized by Defendant has the capacity to store numbers using a random or sequential generator and to dial sequentially or randomly at the time the call is made, and to dial such numbers, en masse, in an automated fashion without human intervention.

47. Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text message also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

48. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

49. Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's goods or services, after being automatically opted into Defendant's text messages.**

50. Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

51. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

52. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

53. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet their burden of showing that it obtained prior express written consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant is liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

54. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

55. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

56. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

57. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of

establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

59. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

61. Defendant – or third parties directed by Defendant – used equipment having the capacity to store numbers using a random or sequential generator, and to dial such numbers, and/or dial numbers automatically from a list of numbers without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

62. These calls were made without regard to whether or not Defendant had first obtained express written consent from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

63. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

64. Defendant knew that it did not have prior express written consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

65. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. Id.

66. Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its autodialed calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff Gabriela Urias, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: August 2, 2018

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

Ignacio J. Hiraldo
**IJH Law**
Florida Bar No. 0056031
14 NE First Ave.
10th Floor
Miami, FL 33132
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

*Counsel for Plaintiff and the Class*